■ In the Matter of CATHERINE D. KENNEDY, Petitioner, v THOMAS G. KENNEDY, SR., Respondent. DUTCHESS COUNTY DEPARTMENT OF SOCIAL SERVICES, Nonparty Appellant. [674 NYS2d 95] —In a support proceeding pursuant to Family Court Act article 4, the Dutchess County Department of Social Services appeals from an order of the Family Court, Dutchess County (Brands, J.), dated March 11, 1997, which, pursuant to Family Court Act § 454 (5), granted the respondent Thomas Kennedy's objections to the denial by the Dutchess County Department of Social Services Support Collection Unit of his challenge to its determination to notify the Department of Motor Vehicles to suspend his driving privileges, and directed it not to issue such notification to the Department of Motor Vehicles.

Ordered that the order is affirmed, with costs.

In December 1982 the Family Court, Dutchess County, issued an order directing the respondent father Thomas Kennedy (hereinafter the father) to pay support for the parties' child, His support obligation was periodically modified upward over the next several years. In July 1992 the order of support was terminated, retroactive to April 7, 1992. During the period that the order was in effect, the father failed to make all of the required payments. In October 1990 his accumulated support arrears were reduced to a judgment of approximately $16,000. Additional arrears of approximately $1,400 were reduced to judgment in April 1992. The father made payments towards the arrears which ultimately satisfied the April 1992 judgment and reduced the sum due under the October 1990 judgment to approximately $8,400. According to the Dutchess County Support Collection Unit (hereinafter the SCU), as of January 1997, the father owed approximately $11,000, including interest on the arrears.

In December 1996 the SCU served the father with notice of its intention to contact the Department of Motor Vehicles (hereinafter the DMV) to suspend his driving privileges, pursuant to Family Court Act § 458-a. The father filed a written challenge with the SCU, which was denied by notice dated January 23, 1997. The father then filed objections to the SCU action in the Family Court (*see*, Family Ct Act § 454 [5]). The

Family Court granted the father's objections and directed the SCU not to notify the DMV to suspend his driving privileges. The SCU appealed.

Pursuant to Family Court Act § 458-a, the court may enforce a child support order by directing the DMV to suspend a support obligor's driving privileges.

Family Court Act § 458-a (a) provides: "If the respondent has accumulated support arrears equivalent to or greater than the amount of *current support* due for a period of four months, the court may order the department of motor vehicles to suspend the respondent's driving privileges * * * For purposes of determining whether a support obligor has accumulated support arrears equivalent to or greater than the amount of *current support* due for a period of four months, the existence of any retroactive support shall not be included in the calculation of support arrears pursuant to this section" (emphasis added; *see also*, Domestic Relations Law § 244-b [a]). Social Services Law § 111-b (12) authorizes the Department of Social Services to enter into an agreement with the DMV in order to carry out this enforcement tool. Social Services Law § 111-b (12) (b) (1) authorizes a license suspension when "a support obligor *who is under a court order* to pay child support * * * has accumulated support arrears equivalent to or greater than the amount of *current support* due for a period of four months" (emphasis added).

We agree with the Family Court that § 458-a does not authorize the court to impose a license suspension in order to enforce the payment of arrears where, as here, there is no support order currently in effect. The meaning of the term "current support" is plain, and the court may not adopt a strained interpretation in order to fill a perceived gap in the statute. Courts "are obliged to interpret a statute to effectuate the intent of the Legislature, and when the statutory 'language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of [the] words' used * * * Equally settled is the principle that courts are not to legislate under the guise of interpretation" (*People v Finnegan*, 85 NY2d 53, 58, *cert denied* 516 US 919, quoting *People ex rel. Harris v Sullivan*, 74 NY2d 305, 309).

We do not rely on the alternative argument that the arrears in this case constitute "retroactive support", which cannot be included when determining whether a support obligor is subject to a license suspension (Domestic Relations Law § 244-b [a]; Social Services Law § 111-b [12] [b] [1]). Although the statute broadly states that "the existence of any retroactive support

shall not be included in the calculation of support arrears pursuant to this section", an argument can be made that the term "retroactive support" in this context, has a more narrow meaning and refers merely to the amount of support due between the filing of a petition for support and issuance of the order awarding support (Domestic Relations Law § 244-b [a]; *see,* Family Ct Act § 449; *see also,* Scheinkman, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 244-b, 1998 Supp Pamph, at 561). By excluding such "retroactive support", the Legislature insured that a support obligor would not face immediate license suspension based on arrears that accumulated before the order went into effect. We need not resolve this ambiguity in the statute since it is clear that the license suspension penalty cannot be invoked in any event, because the father is not under a current order of support.

Furthermore, although not specifically addressed by the parties, we conclude that permitting the SCU to invoke the license suspension provision in this case would, in effect, amount to a retroactive application of the statute. Generally, a statute applies only prospectively, absent clear legislative intent otherwise (*see, Matter of Deutsch v Catherwood,* 31 NY2d 487; *Gleason v Gleason,* 26 NY2d 28, 36; *Morales v Gross,* 230 AD2d 7). The Legislature provided that Family Court Act § 458-a would take effect on July 1, 1995 (L 1995, ch 81, § 246 [3-a]), and there is no indication in the legislative history or the statute itself that this enforcement tool would be applicable to a person who was no longer subject to a support order when the statute was enacted.

Finally, even assuming that the statute applies to the father under these circumstances, the order should be affirmed. The SCU may not invoke the license suspension penalty when it is receiving payments pursuant to an income execution order (*see,* Social Services Law § 111-b [12] [b] [3]). The father presented evidence that an income execution order dated December 31, 1993, remained in effect, and the SCU failed to offer any evidence to refute that claim. O'Brien, J. P., Ritter, Thompson and Goldstein, JJ., concur.

Friedmann, J., dissents, and votes to reverse the order and confirm the determination by the Dutchess County Support Collection Unit, with the following memorandum:

Because I am persuaded that the Family Court exceeded its statutory review authority, and, in addition, either redrafted or misconstrued the governing legislation, I respectfully dissent.

Family Court Act § 454 (5) provides that the Family Court

may review the determination of the Support Collection Unit to suspend a support obligor's driver's license "based upon the record and submissions of the support obligor and the support collection unit upon which the support collection unit's denial was made" (Family Ct Act § 454 [5]). Following such review, "the family court judge shall (i) deny the objections and remand to the support collection unit or (ii) affirm the objections if the court finds the determination of the support collection unit is based upon a clearly erroneous determination of fact or error of law" (Family Ct Act § 454 [5] [emphasis added]). Here, the Family Court affirmed the support obligor's objections without identifying in what way the Support Collection Unit's determination had been "based upon a clearly erroneous determination of fact or error of law" (Family Ct Act § 454 [5]).

In affirming the obligor's objections, the Family Court relied upon its own interpretation of Family Court Act § 458-a (a), which provides: "If the respondent has accumulated support arrears equivalent to or greater than the amount of current support due for a period of four months, the court may order the department of motor vehicles to suspend the respondent's driving privileges * * * For purposes of determining whether a support obligor has accumulated support arrears equivalent to or greater than the amount of current support due for a period of four months, the existence of any retroactive support shall not be included in the calculation of support arrears pursuant to this section" (see also, Social Services Law § 111-b [12] [b] [1]; Domestic Relations Law § 244-b).

Firstly, as the majority concedes, there is no merit to the obligor's suggestion, which was apparently adopted by the Family Court, that the Support Collection Unit factored "retroactive support" into its computation of the respondent's debt, in violation of the statute. "Retroactive support accumulates from the time the petition is filed until an order is entered" (Matter of Richardson v Scott M. C., 157 Misc 2d 615, 616; see also, Scheinkman, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 244-b, 1998 Supp Pamph, at 561; see also, Besharov, Supplementary Practice Commentaries McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 440, 1998 Supp Pamph, at 117; Matter of Manigoult v Arline, 157 Misc 2d 195). That is because, when a child support order is issued, a court may direct it to be retroactive to the date of the filing of the petition—which might well have taken place more than four months earlier—a support obligor could theoretically be found to have accrued four months of support arrears and be a candidate for suspension of

his driver's license before his obligation to pay even comes into being. The Legislature sought to obviate such a draconian result by excluding "retroactive support" from the four-month computation. No "retroactive support", as distinguished from "arrears", has been charged to the obligor in the instant case.

Secondly, the Family Court overruled the appellant Department of Social Services (hereinafter the DSS) when it interpreted the statute to mean that an obligor's driving privileges could only be suspended when the arrears sought had accumulated under a *"current"* support order. However, the statute does *not* say that an obligation of this sort cannot be enforced if it accrued under an expired order of support rather than a current one (*see*, Family Ct Act § 458-a [a]; *see also*, Social Services Law § 111-b [12] [b] [1]; Domestic Relations Law § 244-b [a]). Indeed, in the Practice Commentary to the comparable provision in the Domestic Relations Law § 244-b, it is noted that "[t]o qualify as support arrears for purposes of driver's license suspension, the payments must be due under a court order or judgment" (Scheinkman, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 244-b, 1998, *op cit.*, at 561). Whether or not said order or judgment is still in effect when the license suspension penalty is sought to enforce payment of sums due thereunder would appear to be immaterial.

And indeed, it would make little sense to require that a Support Collection Unit *must* enforce payment of child support arrears during the pendency of the order under which they were accrued or lose the right to do so. On the one hand, such a rule might cause a Support Collection Unit to be precipitate in invoking punitive provisions in the often-sensitive setting of domestic relations, where obligors have been known to fall behind in child support payments because of legitimate financial stresses. On the other hand, to so limit the reach of Support Collection Units would subvert the over-all remedial purpose of the statutes, which was to "add[ ] important new weapons for use in the battle to collect [child] support from recalcitrant obligors" (Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 244-c, 1998 Supp Pamph, at 565). Under the construction given the governing statute by the Family Court and the majority, a guileful obligor would be motivated to avoid timely paying child support—or at least maximize his arrears—confident that whatever debt remains outstanding upon the emancipation of his children will be automatically forgiven. To encourage such long-term delinquency would also undermine

the secondary legislative purpose of discouraging dependency on the welfare system, and, wherever possible, of keeping or weaning single-parent families off the public assistance rolls (*see, e.g.*, Mem of Assembly Rules Comm, Governor's Bill Jacket, L 1995, ch 81).

Family Court Act § 458-a (a) *does* require that before the sanction of license suspension may be sought the amount of arrears must equal or exceed "the amount of *current* support due for a period of four months" (emphasis added). It is not disputed that following the termination of the respondent's child support obligations on April 7, 1992, his "current" monthly support obligation was reduced to zero. Clearly, the $10,000 + arrears that the Support Collection Unit claims to be due under the respondent's former child support order exceeds his "current" four-month obligation, and also exceeds four months of aggregated support under any of the child-support orders in effect between November 3, 1983, and April 7, 1992.

I do not agree with the majority's conclusion that application of Family Court Act § 458-a to this case is barred by the doctrine that statutes are prospective only unless their enabling language indicates otherwise. In addition to the fact that this theory was not raised by either of the parties, it is worthy of note that the respondent's debt, although accumulated prior to April 7, 1992, was still due and owing in January 1997, well after Family Court Act § 458-a became effective on July 1, 1995. The latter legislation in no way changed the respondent's substantive child-support obligation: it merely gave the agency a method of collection. It is well established that statutes enacted to supply a remedy for the redress of wrongs already done, as well as "procedural" legislation designed to "provide a change in the form of a remedy or provide a new remedy for an existing wrong", are ordinarily given retroactive effect (*see*, McKinney's Cons Laws of NY, Book 1, Statutes §§ 55, 54; *see also, Auger v State of New York*, 236 AD2d 177).

While it is true that when "support payments *are* being received" by way of income execution, the penalty of license suspension may not be sought (Social Services Law § 111-b [12] [b] [3] [emphasis added]; *see also*, Social Services Law § 111-b [12] [e] [2] [iv]), here, according to the DSS, no such salary attachment was in effect when the instant penalty was applied for. To the extent that the father complains that the DSS improperly credited some of his payments pursuant to an earlier income execution to a second woman to whom he also owed child support, the DSS counters that this temporary contretemps was "minimal" and has in any event been

remedied. It bears remarking that on this appeal the father does not deny that he owes substantial arrears, submitting only that "[e]ven with * * * accrued interest [his properly computed] arrears would be no more than approximately $6,500.00".

Because the Family Court exceeded its authority in substituting its interpretation of Family Court Act § 458-a for that of the DSS, even though the latter's reading of the legislation was not "clearly erroneous", I believe that the order appealed from should be reversed, and the matter remitted to the Dutchess County Support Collection Unit to proceed with suspension of the respondent's New York State driving privileges.