**Niccki Larae BELLAMY,
Appellant–Petitioner,**

v.

**Phillip Tyrone GILLIS, Appellee–
Respondent.**

No. 49A05–9810–JV–505.

Court of Appeals of Indiana.

Jan. 31, 2000.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

**OPINION**

FRIEDLANDER, Judge

■ Nickki Larae Bellamy appeals the trial court's judgment reinstating the driver's license of Phillip Tyrone Gillis [1] after

---

1. Gillis did not file a brief on appeal. The failure to file an appellee's brief allows this court to reverse if the appellant can establish prima facie error, *i.e.*, error "at first sight, on first appearance, or on the face of it." *Santana v. Santana,* 708 N.E.2d 886, 887 (Ind.Ct.

an administrative suspension based upon a child support delinquency. As restated, Bellamy raises two issues for review:

1. Did Gillis fail to exhaust his administrative remedies thereby depriving the trial court of jurisdiction to reinstate Gillis's driving privileges?

2. If the trial court had authority to order reinstatement, was the order supported by sufficient evidence?

We reverse.

The facts disclose that in March 1994, the parties agreed that Gillis is the father of a child born to Bellamy in 1992. Based upon an agreement by the parties, the court ordered Gillis to pay child support in the amount of $50.00 per week. Thereafter, Gillis amassed a sizeable child support delinquency. A certified copy of a document from the Marion County Prosecutor's Office, Child Support Division, dated April 30, 1998, placed the delinquency at $6,678.94. The Chronological Case Summary (CCS) notes that several contempt citations were issued concerning the delinquency. The CCS reveals that Gillis was jailed at least once for contempt.

Based upon information contained in filings within the Record of Proceedings and entries on the CCS, it is apparent that Gillis's driver's license was suspended, in part, based upon the child support delinquency in this cause.[2] The record does not contain the notice of suspension, or the order of suspension by the Title IV–D agency to the Bureau of Motor Vehicles.

Gillis filed a petition for reinstatement of his driver's license, with the paternity court, on December 12, 1997.[3] The petition for reinstatement did not question the authority of the Title IV–D agency[4] to order suspension of Gillis's driver's license through the Bureau of Motor Vehicles. Gillis alleged, *inter alia*, that he had made appropriate arrangements to pay the child support payments through an income withholding order; that he was employed as a commercial truck driver and that he could not earn sufficient income to pay child support without his driver's license; that he had unsuccessfully sought the assistance of the Title IV–D agency regarding reinstatement of the license; and that he desired equitable relief from the court in the form of "an order directing the Indiana Bureau of Motor Vehicles to restore [his] driving privileges and license so that he can resume his position as a truck driver." *Record* at 43. Gillis's request for reinstatement is noted in the CCS.

On January 7, 1998, Bellamy, by counsel of the Prosecuting Attorney of Marion County, the Title IV–D agency, moved for dismissal of Gillis's reinstatement request. Bellamy alleged, *inter alia*, that the suspension statute, Ind.Code Ann. § 12–17–2–34 (West Supp.1999), provides an administrative remedy; that Gillis failed to request an administrative hearing to contest the license suspension; that Gillis failed to meet the substantive requirements for reinstatement; that Gillis has an appropriate remedy within the administrative agency by complying in a manner set out by statute; and that, pursuant to Ind. Trial Rule 12(B)(1) or the doctrine of primary jurisdiction, the trial court should dismiss Gillis's reinstatement request based upon Gillis's failure to exhaust his administrative remedies.

App.1999) (quoting *Johnson County Rural Elec. v. Burnell,* 484 N.E.2d 989, 991 (Ind.Ct. App.1985)).

**2.** A filing by Gillis, requesting reinstatement of his driver's license, names another party as the petitioner on behalf of another child. A responsive filing by Bellamy clarifies that the petitioner named by Gillis is a party to a different action. Some of the CCS entries distinguish between the different cases.

**3.** The filing is the one referred to in footnote 2.

**4.** Pursuant to Ind.Code Ann. § 31–9–2–130 (West 1999), in conjunction with Ind.Code Ann. § 12–17–2–18 (West Supp.1999), a county prosecutor's office may be a Title IV–D agency.

Specifically noting that it retained subject-matter jurisdiction over the cause, the court granted Bellamy's motion to dismiss Gillis's reinstatement petition on January 20, 1998. A CCS entry dated January 23, 1998 noted that Gillis must "pay regular payments before [the court] reconsiders reinstatement." *Record* at 4. The entry noted that the matter would be reviewed in March 1998. The March 1998 CCS entry noted that Gillis was "making efforts", but that he was not in compliance with the court ordered child support. *Record* at 4. The matter was set for review in May 1998. The CCS notes that Gillis's driver's license was ordered reinstated on May 1, 1998, and that Gillis was "advised that all support to be paid on *both* cases … or [his driver's license] will again be suspended." *Record* at 4 (emphasis in original). The record does not contain evidence regarding the decision to reinstate the driver's license. After the trial court reinstated Gillis's license, Bellamy filed a motion to correct error. The motion was denied.

### 1.

Bellamy asserts that Gillis's motion for reinstatement of Gillis's driver's license filed with the paternity court was inappropriate because the governing statutes provide for and require reinstatement by the Title IV–D agency. Thus, according to Bellamy, the trial court erred because it did not have authority to order reinstatement of Gillis's driver's license absent notice to the Bureau of Motor Vehicles by the Title IV–D agency that Gillis was eligible for reinstatement. According to Bellamy, Gillis failed to exhaust his administrative remedies.

Bellamy contends that pursuant to the statutory framework: 1) once the statutory prerequisites are met, a Title IV–D agency orders the suspension; 2) the suspension can be contested on only limited grounds; and 3) the Title IV–D agency must order the reinstatement of the driver's license when the party delinquent in child support purges the delinquency in a manner set out by statute.

Ind.Code Ann. § 12–17–2–34 (West Supp.1999), mandates Title IV–D agencies to order the suspension of driver's licenses for obligors with certain child support delinquencies. The legislature provided for notice of an impending license [5] suspension and the means to contest the impending suspension. *See* IC § 12–17–2–34; IC § 12–17–2–35. In pertinent part, IC § 12–17–2–34 provides:

(a) When the Title IV–D agency finds that an obligor is delinquent and can demonstrate that all previous enforcement actions have been unsuccessful, the Title IV–D agency shall send, to a verified address, a notice to the obligor that includes the following:

(1) Specifies that the obligor is delinquent.

(2) Describes the amount of child support that the obligor is in arrears.

(3) States that unless the obligor:

---

5. IC § 12–17–2–34 provides, inter alia, for suspension of driver's licenses, professional licenses, gaming licenses, and licenses issued by the Department of Natural Resources, for certain child support delinquencies. Our research reveals only one reported case in Indiana that mentions the suspension of driving privileges and a professional license based upon a party's child support delinquency. In *Crowley v. Crowley*, 708 N.E.2d 42 (Ind.Ct. App.1999), this court noted that the appellant's professional medical license and driver's license were suspended because he was delinquent in paying child support. The appellee in *Crowley* had moved the trial court to impose the sanctions because the appellant was delinquent with both child support and maintenance/mortgage payments ordered by the trial court provisionally. This court reproduced portions of the trial court's orders, including an explanation that the court could not impose the sanction suspending the licenses for a delinquency other than child support. *Id.* There is no indication that the *Crowley* court was asked to determine the viability of the trial court's action or whether the threatened driver's license and professional license suspensions were initially ordered by a Title IV–D agency.

(A) pays the obligor's child support arrearage in full;

(B) requests the activation of an income withholding order under IC 31–16–15–2 and establishes a payment plan with the Title IV–D agency to pay the arrearage; or

(C) requests a hearing under section 35 of this chapter;

within twenty (20) days after the date the notice is mailed, the Title IV–D agency shall issue an order to the bureau of motor vehicles stating that the obligor is delinquent and that the obligor's driving privileges shall be suspended.

(4) Explains that the obligor has twenty (20) days after the notice is mailed to do one (1) of the following:

(A) Pay the obligor's child support arrearage in full.

(B) Request the activation of an income withholding order under IC 31–16–15–2 and establish a payment plan with the Title IV–D agency to pay the arrearage.

(C) Request a hearing under section 35 of this chapter.

* * *

(6) Explains that the only basis for contesting the issuance of an order under subdivision (3) [for driver's licenses] or (5) [for professional and other licenses] is a mistake of fact.

(7) Explains that an obligor may contest the Title IV–D agency's determination to issue an order under subdivision (3) or (5) by making written application to the Title IV–D agency within twenty (20) days after the date the notice is mailed.

(8) Explains the procedures to:

(A) pay the obligor's child support arrearage in full;

(B) establish a payment plan with the Title IV–D agency to pay the arrearage; and

(C) request the activation of an income withholding order under IC 31–16–15–2.

(b) Whenever the Title IV–D agency finds that an obligor is delinquent and has failed to:

(1) pay the obligor's child support arrearage in full;

(2) establish a payment plan with the Title IV–D agency to pay the arrearage and request the activation of an income withholding order under IC 31–16–15–2; or

(3) request a hearing under section 35 of this chapter within twenty (20) days after the date the notice described in subsection (a) is mailed;

the Title IV–D agency shall issue an order to the bureau of motor vehicles stating that the obligor is delinquent.

(c) An order issued under subsection (b) must require the following:

(1) If the obligor who is the subject of the order holds a driving license or permit on the date the order is issued, that the driving privileges of the obligor be suspended until further order of the Title IV–D agency.

(2) If the obligor who is the subject of the order does not hold a driving license or permit on the date the order is issued, that the bureau of motor vehicles may not issue a driving license or permit to the obligor until the bureau of motor vehicles receives a further order from the Title IV–D agency.

(d) The Title IV–D agency shall provide the:

(1) full name;

(2) date of birth;

(3) verified address; and

(4) Social Security number or driving license number;

of the obligor to the bureau of motor vehicles.

Specific notice requirements are set out in Ind.Code Ann. § 9–25–6–20 (West Supp.

1999). The Title IV–D agency must notify the obligor, inter alia, 1) that a suspension will be ordered based upon the child support delinquency, 2) that the obligor may pay the arrearage in full, execute a wage assignment, or request a hearing within twenty days of the date the notice is mailed, 3) that the only basis to contest the impending driver's license suspension for child support delinquency is a mistake of fact, 4) "that the suspension will terminate ten (10) business days after the [Bureau of Motor Vehicles] receives a notice from the Title IV–D agency that the person has" purged the delinquency, and 5) that, under narrowly drawn circumstances as set forth, an obligor may be granted a restricted driving permit.[6] IC § 9–25–6–20. Ind. Code Ann. § 12–17–2–35 describes the requirements for a hearing.

 Generally, any available administrative remedies must be pursued before a claimant is allowed access to the courts. *Martin v. Monroe County Plan Comm.,* 660 N.E.2d 1073 (Ind.Ct.App.1996), trans. denied. "A party's failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction." *Id.* at 1074. Certain circumstances may exist, however, relieving a party from a duty to exhaust available administrative remedies prior to seeking judicial review. *Id.* "Such circumstances include: where compliance with the exhaustion rule would be futile; where an applicable statute is charged to be void on its face; or where strict compliance would result in irreparable harm." *Id.* at 1075.

 "When a court's subject matter jurisdiction is contested on grounds of 'ex-

haustion of remedies,' 'primary jurisdiction,' or similar arguments alleging that the issues presented are within the exclusive jurisdiction of regulatory or administrative agencies to resolve, the court must examine each issue or claim in the case to see if any falls within the jurisdiction of the trial court." *Town Bd. of Orland v. Greenfield Mills,* 663 N.E.2d 523, 525 (Ind. 1996). When all of the issues or claims are clearly matters for administrative or regulatory agency determination, a court is without subject-matter jurisdiction to determine the issues and must dismiss the complaint. *Id.* (noting that even one issue within the jurisdiction of the trial court places the entire case within the court's jurisdiction, but determining that an asserted constitutional claim which would seemingly be within the jurisdiction of a court was, upon examination, underpinned by the precise issues the legislature authorized the administrative agency to decide).

 The record does not reveal assertions by Gillis that compliance with the exhaustion rule would be futile, that the statute is void on its face, or that strict compliance would result in irreparable harm. Gillis's motion for reinstatement did not assert any matters of law to bring the issues regarding reinstatement within the purview of the trial court. The motion did not claim any procedural deficiencies or a mistake of fact. The record does not disclose a request for a hearing. Further, Gillis has not favored us with a brief on appeal. Thus, no reasons for relieving Gillis of the burden to exhaust available administrative remedies have been presented

---

**6.** Gillis's motion for reinstatement of his driver's license did not claim that pursuit of administrative remedies would have been futile, a condition which could absolve him of a duty to pursue administrative remedies. Also, it appears that a mechanism is in place so that the request for relief would not be futile. Ind.Code § 9–25–6–20(7) provides that an obligor "may be granted a restricted driving permit under IC 9–24–15–6.7 if the person can prove that public transportation is unavailable for travel by the person:

(A) to and from the person's regular place of employment;
(B) in the course of the person's regular employment;
(C) to and from the person's place of worship; or
(D) to participate in visitation with petitioner's children consistent with a court order granting visitation."

and are not apparent on the face of the record. The cause must be reversed for dismissal of Gillis's motion for reinstatement of his driver's license based upon Gillis's failure to exhaust the available administrative remedies.[7]

## 2.

Our decision to reverse the cause obviates the State's question regarding the sufficiency of the evidence. We also note that the sufficiency of the evidence regarding the driver's license suspension and reinstatement could not have been reviewed inasmuch as the record does not contain any evidence on those matters.

Judgment reversed.

DARDEN, J., and GARRARD, J., concur.

---

7. We note that we are not asked to determine the constitutionality of the suspension provisions, nor are we asked to determine the adequacy of the administrative remedies. We do note that our supreme court considered the suspension of a driver's license for a non-driving offense in *Mitchell v. State*, 659 N.E.2d 112 (Ind.1995). Mitchell contested the suspension of his driver's license, license plates, and ability to register a vehicle imposed by the trial court after his conviction for possession of cocaine. The supreme court determined that the sentencing statute requiring the suspension was procedurally and substantively sound with regard to the constitutional due process concerns raised by Mitchell. The *Mitchell* court also noted that there is no constitutional right to obtain and keep a driver's license. *Id.* Driving privileges are, at best, considered an entitlement that may be withheld, suspended, or revoked by the state. *Id.*; *Schrefler v. State*, 660 N.E.2d 585 (Ind.Ct.App.1996).

Other states' legislatures have instituted procedures for suspension of driver's licenses and professional licenses based upon child support delinquencies. *See State Dep't. of Revenue v. Beans*, 965 P.2d 725 (Alaska 1998) (statute allowing suspension of a driver's license for a child support delinquency was not violative of substantive due process or equal protection rights); *In re Child Support of Mason*, 290 Mont. 253, 964 P.2d 743 (1998) (not an abuse of discretion to condition a stay of a driver's license suspension upon the immediate payment of a portion of the child support judgment); *Kennedy v. Kennedy*, 251 A.D.2d 407, 674 N.Y.S.2d 95 (1998) (administrative order suspending obligor's driver's license for failure to pay child support was inapplicable because no current support order was in effect); *Richey v. Richey*, 704 So.2d 343 (La.Ct. App.1997) (trial court did not abuse its discretion by suspending mother's nursing and driver's licenses for failure to pay child support even though the licenses may have been critical to mother's ability to pay child support).