OPINION OF THE COURT
John M. Hunt, J.
Respondent, Willie B., has filed objections pursuant to Family Court Act § 454 (5) challenging the determination of the New York City Support Collection Unit that his driving privileges should be suspended by the State Department of Motor Vehicles based upon its determination that he owes child support arrears in a total amount greater than the amount of court ordered child support that would be due in a four-month period (Social Services Law § 111-b [12] [b] [1]).
By order of this court, dated August 6, 2004, proceedings upon respondent’s objections were held in abeyance and the New York City Support Collection Unit (SCU) was directed to file a current account statement setting forth respondent’s payments and its receipt of monies under the order of support (Social Services Law § 111-h [10]). In addition, counsel for SCU was directed to submit documentation concerning SCU’s past and present issuance of income executions pursuant to Civil Practice Law and Rules § 5241 for enforcement of the order of support. The SCU and its attorneys have submitted the documentation requested by the court and no further submissions have been received from the respondent.
By order of the Family Court, Queens County, dated March 29, 2000, respondent was directed to pay support in the amount of $500 biweekly on behalf of the parties’ two children. The March 29, 2000 order directed that respondent remit child support payments through the SCU {see, Family Ct Act § 440 [1] [a]; Social Services Law § 111-h), and the account statement prepared by SCU reflects that an income execution for support was sent to respondent’s employer and that the first payment under that income execution in the amount of $250 was received by SCU on July 25, 2000.[1] According to the court record and SCU’s accounting statement, respondent should have paid a total of $55,652 under the order of support as of August 11, 2004 and that he had actually paid a total of $34,625.65, leaving *329 total accrued child support arrears of $21,026.35 as of August 11, 2004. Of the $34,625.65 received by the SCU since March 29, 2000, $30,645.65 was received through an income execution issued pursuant to Civil Practice Law and Rules § 5241 and $3,980 was received directly from the respondent.
At the time that the order of support was entered on March 29, 2000, respondent held two positions: a full-time job with the New York City Health and Hospitals Corporation (HHC) as well as a part-time position with Brookdale Hospital Medical Center. According to the SCU records, the last payment from HHC under the income execution in the amount of $300 was received on January 7, 2004, and the most recent payment from Brook-dale Hospital in the amount of $215.04 was received on August 6, 2004. SCU’s records indicate that no payments from any income execution were received between January 8, 2004 and May 20, 2004.[2] On or about March 29, 2004, SCU issued a notice to respondent that it intended to notify the Department of Motor Vehicles to suspend his driving privileges in accordance with Social Services Law § 111-b (12) (a) and Vehicle and Traffic Law § 510 (4-e), and respondent filed an administrative challenge with SCU (Social Services Law § 111-b [12] [d] [1]). SCU denied the challenge and having exhausted his administrative remedies (Matter of Commissioner of Social Servs. [Eleanor C.] v Daryl S., 235 AD2d 126, 133-134 [1997]), respondent then filed these objections with the Family Court (Family Ct Act § 454 [5]).
The procedures governing the Family Court’s review of objections to the Support Collection Unit’s denial of a challenge to a determination to seek suspension of driving privileges are contained in Family Court Act § 454 (5) (Matter of Beal v Beal, 255 AD2d 313, 314 [1998]; Matter of Greco v Greco, 176 Misc 2d 27, 28 [1998]), and the scope of that review is limited in nature. Pursuant to the statute, “[t]he court’s review shall be based upon the record and submissions of the support obligor and the support collection unit upon which the support collection unit’s denial was made” (Family Ct Act § 454 [5]). If the court finds that the Support Collection Unit’s determination is correct then the objections are denied and the Support Collection Unit is notified to proceed with its request to suspend the obligor’s driving privileges (Family Ct Act § 454 [5]; see, Matter of In *330 versa v Inversa, 293 AD2d 611, 612 [2002]; Matter of Beal v Beal, at 314). However, if the court finds that the Support Collection Unit’s determination “is based upon a clearly erroneous determination of fact or error of law . . . the court shall direct the support collection unit not to notify the department of motor vehicles to suspend the support obligor’s driving privileges” (Family Ct Act § 454 [5]).
Of particular relevance to this case is a provision contained in Social Services Law § 111-b (12) (b) (3), which reads as follows:
“Notwithstanding the requirements of this subdivision, no notice shall be issued by the department [of social services] pursuant to subparagraph one of this paragraph to a support obligor from whom support payments are being received by the support collection unit as a result of an income execution or an income deduction order issued pursuant to section five thousand two hundred forty-one or five thousand two hundred forty-two of the civil practice law and rules.”
The suspension of driving privileges on account of unpaid support is considered a “penalty” (Matter of Kennedy v Kennedy, 251 AD2d 407, 409 [1998], lv denied 92 NY2d 818 [1999]), and Social Services Law § 111-b (12) (b) (3) has been construed so as to preclude the suspension of driving privileges as a support enforcement mechanism by the Support Collection Unit where support payments are being received by way of an income execution or income deduction order issued under Civil Practice Law and Rules § 5241 or § 5242 (id.).[3] In its decision in Matter of Kennedy, the Appellate Division held, inter alia, that “[t]he SCU may not invoke the license suspension penalty when it is receiving payments pursuant to an income execution order,” and in that case the father “presented evidence that an income execution order . . . remained in effect, and the SCU failed to offer any evidence to refute that claim” (id. at 409).
In the case before this court, the account and record statement prepared by SCU indicates that as of August 11, 2004 it *331 has received support payments in the amount of $34,625.65, and of that sum $30,645.65 was received through one or more income executions and the balance of the money was received directly from respondent. The SCU statement further indicates that the first payment under an income execution was received on July 25, 2000 and that the most recent payment by income execution was received from Brookdale Hospital on August 6, 2004. While it appears that no payments by income execution were received for the period of January 8, 2004 through May 20, 2004, SCU’s record indicates that respondent made direct payments to SCU in the amount of $1,200 during that period.
Accordingly, because support payments have been received by means of income execution since July 2000 and such payments have been received from respondent’s employer by SCU as recently as August 6, 2004, there is evidence that an income execution was in effect before and after the time SCU sent the notice to the respondent and therefore this is not a proper case in which to penalize the respondent by suspending his driving privileges (Matter of Kennedy v Kennedy at 409). It should be noted that a break in the receipt of support payments by income execution may be caused by any number of factors including a temporary layoff, a change in a parent’s employment,[4] or temporary disability or illness. There is no indication in the record or the written submissions that SCU sought to determine the reason why payments were not being received by income execution between January 8, 2004 and May 20, 2004 and prior to sending notice of its intention to seek suspension of respondent’s driving privileges, or that SCU made any efforts through its Parent Locator Service (see, Social Services Law § 111-b [4]; § 111-m) to discover whether and by whom the respondent may have been employed during that period of time so that a new income execution might be issued. It is also relevant that there is presently an active income execution which is being honored by respondent’s current employer or income payor which further indicates that additional extrajudicial enforcement *332 mechanisms are not required in order to collect child support from the respondent.[5]
Therefore, upon review of the record and the submissions of the respondent and the Support Collection Unit, this court finds SCU’s determination to seek suspension of respondent’s driving privileges to be erroneous as a matter of fact or law and respondent’s objections are affirmed in accordance with Family Court Act § 454 (5).
It is therefore ordered that the objections filed by the respondent pursuant to Family Court Act § 454 (5) are granted and the Support Collection Unit is directed not to notify the Department of Motor Vehicles to suspend respondent’s driving privileges (Family Ct Act § 454 [5]).

. According to SCU, respondent made payments in the amount of $3,280 directly to SCU during the period of April 25, 2000 and October 12, 2000.

. The May 20, 2004 payment was received from an employer identified as “Mercyhome” and on May 25, 2004 SCU received a payment in the amount of $238.99 from Brookdale Hospital.

. In addition to the suspension of driving privileges as a penalty for the failure to pay support, New York law also provides for the suspension of a parent’s professional, occupational or business license, as well as the suspension of a parent’s recreational license for nonpayment of support (Family Ct Act § 454 [2] [f], [g]; §§ 458-b, 458-c).

. An income execution may be served upon a parent’s “current or subsequent employer” (CPLR 5241 [c] [1] [iv]), and a parent’s former employer is required to inform the Support Collection Unit if a parent’s employment terminates as well as the name and address of the parent’s new employer if known to the former employer (CPLR 5241 [c] [1] [ix]).

. Regardless of whether or not respondent’s driving privileges are suspended, he remains liable for payment of all past-due child support (Matter of Box v Tynon, 90 NY2d 166, 173-174 [1997]; Matter of Cook v Miller, 4 AD3d 745, 746 [2004]).