Matter of Adrianne F. v Anthony S. (2005 NY Slip Op 25209)

Matter of Adrianne F. v Anthony S.

2005 NY Slip Op 25209 [8 Misc 3d 751]

May 26, 2005

Hepner, J.

Family Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, August 17, 2005

[*1]
In the Matter of Adrianne F., Petitioner,
v
Anthony S., Respondent.
Family Court, Kings County, May 26, 2005

APPEARANCES OF COUNSEL

Anthony S., respondent pro se. Michael A. Cardozo, Corporation Counsel, Brooklyn (Scott Caplan of counsel), for petitioner.

OPINION OF THE COURT

Paula J. Hepner, J.
As a consequence of being notified on January 14, 2005 by the support collection unit (hereinafter SCU) that his driving privileges will be suspended pursuant to Social Services Law § 111-b (12) (b) (1),[FN1]

 the respondent filed a challenge with the SCU.[FN2]

[*2]The SCU denied respondent's challenge on April 5, 2005. The respondent filed an objection[FN3]

with this court on April 21, 2005 pursuant to Family Court Act § 454 (5) claiming that he is a full-time student, that he has no income since being fired from his former job on November 17, 2004, that the arrears owed as of that date are due to one unreimbursed medical bill not nonpayment of weekly child support, and that suspending his driver's license would prevent him from completing his emergency medical technician course and becoming a member of the "work force." The respondent seeks review of the SCU's determination that his driving privileges should be suspended.
Subsequently, Assistant Corporation Counsel Scott Caplan filed a rebuttal[FN4]

on April 28, 2005 on behalf of the petitioner in support of the determination by the SCU. In his rebuttal, the petitioner stated the SCU properly denied the respondent's challenge because respondent had accumulated child support arrears of four months or more and had not overcome his driver's license suspension in accordance with the methods outlined in Social Services Law § 111-b (12), nor did he provide SCU with the required statement of net worth.
Upon receiving a notice to suspend driving privileges, the statute provides support obligors with three remedies. The first is to seek to avoid the suspension pursuant to Social Services Law § 111-b (12) (e) (1)-(4). The respondent attempted to use the provisions of Social Services Law § 111-b (12) (e) (4) (ii) by claiming that paying the amount due would place him below the self-support reserve. He was unable to substantiate this claim as he did not return the affidavit of net worth and his 2004 tax return reflected 11 months of income which did not place him below the self-support reserve. Although the SCU did send a request for further financial information in the form of an affidavit of net worth, the respondent did not return the affidavit by the March 23, 2005 deadline or submit any other financial documentation in furtherance of his claim. Because the respondent was fired near the end of the year, and the SCU considered his earnings profile for the entire 2004 year, it would have been impossible for him to demonstrate that his income fell below the self-support level. Consequently, the SCU denied the respondent's effort to avoid the suspension.
The second remedy available, pursuant to Social Services Law § 111-b (12) (f), is to assert that SCU did not give notice that the continued failure to pay child support arrears would result in a suspension of a driver's license or, in the alternative, that the content of the notice was inadequate. The procedure for doing this is to request a review under Social Services Law § 111-b (12) (d). While the respondent [*3]requested a review, he did not claim he was not notified or that the notice he received was insufficient.
The third remedy, available under Social Services Law § 111-b (12) (d) (1), is to submit a challenge in writing to the correctness of the determination by SCU to suspend driving privileges. The statute allows a support obligor to "submit documentation demonstrating mistaken identity, error in calculation of arrears, financial exemption . . . the absence of an underlying court order . . . determination to suspend [his driver's license]." In the respondent's challenge he claimed that he was a full-time student and that his posttermination income falls below the self-support reserve. The SCU denied the respondent's challenge for the reasons stated above as he failed to establish any legally recognizable reason to overcome the determination by the SCU that his license should be suspended.
Family Court Act § 454 (5) empowers a Family Court Judge to review a support collection unit's denial of a challenge made by a support obligor pursuant to Social Services Law § 111-b (12) (d). Family Court Act § 454 (5) provides that "[t]he court's review shall be based upon the record and submissions of the support obligor and the support collection unit upon which the support collection unit's denial was made." The scope of the family court's "review" is confined to an inquiry whether the determination of the SCU contained no "clearly erroneous determination of fact or error of law." (Family Ct Act § 454 [5].) Upon a review of the "challenge" to the SCU's determination, the objection filed by the respondent, the rebuttal filed by the petitioner and the court record in this case, the respondent's objection is granted for the reasons outlined below.
Of relevance to the court's decision are the following facts. The respondent's child support was being paid through an income execution that was issued on October 18, 2001.[FN5]

The respondent was fired from his job on November 17, 2004. On November 18, 2004, the respondent was current in his weekly child support payments and did not owe arrears equaling four months of child support[FN6]

as his last child support income deduction payment occurred on November 24, 2004 according to the determination made by the SCU. Within 24 hours of being terminated from his job, the respondent came to court and filed a petition for a downward modification of child support in order to seek relief before any weekly child support arrears could begin to accrue. Despite his efforts to avoid becoming delinquent, arrears continued to accrue while the respondent waited six months for his hearing on the downward modification.[FN7]

The arrears upon which the SCU ultimately based the determination to suspend the respondent's driving privileges were the result of the accumulation of the unreimbursed dental expense entered on October 21, 2004 and the accumulated weekly child support incurred from November [*4]24, 2004 to April 5, 2005.[FN8]

The objection is granted in the first instance on procedural grounds. Pursuant to Social Services Law § 111-b (12) (b) (3), "no notice shall be issued by the department pursuant to subparagraph one of this paragraph to a support obligor from whom support payments are being received by the support collection unit as a result of an income execution or income deduction order." In this case the respondent's payments were being made as a result of income execution since the October 18, 2001 child support order and remained so until he was fired on November 17, 2004. There is no indication in the record that the SCU made efforts to "determine . . . why payments were not being received" (Matter of Karen B. v Willie B., 5 Misc 3d 327, 331 [Fam Ct 2004]). Because respondent's child support payments were being paid through an income execution, which the SCU knew about, the SCU was barred by statute from issuing any notice to suspend respondent's driver's license. Were this pro se litigant conversant with the statute, the respondent could have made this argument in his challenge before the SCU under the provision of Social Services Law § 111-b (12) (d) (1) for any "other reason" for why he is not subject to the suspension provisions. This court finds that, pursuant to Family Court Act § 454 (5), there was an "erroneous determination of fact or error of law" committed by the SCU when they notified the respondent of a license suspension in contravention of the statute.
The Family Court is "a court of limited jurisdiction and may exercise only those powers specifically granted to it by the State Constitution or by statute" (Matter of Anthony S., 178 Misc 2d 1, 11 [Fam Ct, Kings County 1998]). The Family Court does not possess equity jurisdiction (Matter of Marvin A. v Denise A., 161 Misc 2d 745, 747 [Fam Ct, Queens County 1994]). Nonetheless, the courts have "unanimously recognized that in appropriate cases they have inherent power to make orders that will correct evils, preserve rights and prevent injury to innocent parties" (Hendel v Hendel, 59 Misc 2d 770, 775 [Sup Ct, NY County 1969]). The objection is granted on these grounds in the interests of justice because neither the SCU petition clerk nor the support magistrate promptly scheduled and completed the hearing to determine whether the respondent was entitled to a [*5]reduction in support payments.[FN9]

After the respondent filed his downward modification, the initial return date given by the petition clerk for the support collection unit was January 20, 2005. Because of this delay, two months of support arrears were able to accrue. On January 14, 2005, the SCU issued its notice to suspend the respondent's license, six days prior to his return date. The support magistrate compounded the problem by adjourning the hearing an additional five months. By May 17, 2005, the next date scheduled for the respondent's downward modification, the SCU had issued its denial of the respondent's driver's license suspension (Apr. 5, 2005) and arrears had reached $5,708.94. While arrears can be adjusted retroactively to the date of the filing of a modification petition, there is no provision in Social Services Law § 111-b (12) prohibiting the SCU from issuing a suspension notification while a petition for a downward modification is pending. In light of this, the SCU petition clerk and the support magistrates must expedite the process for calendaring and reviewing applications for downward modifications to avoid precipitating a license suspension for nonpayment of support.
For all of the foregoing reasons, the respondent's objection is granted and the determination of the SCU is vacated. The SCU is directed not to notify the Department of Motor Vehicles to suspend the respondent's driving privileges.

Footnotes

Footnote 1: Under the statute, when a support obligor who is under a court order to pay child support "has accumulated support arrears equivalent to or greater than the amount of current support due for a period of four months, the office of temporary and disability assistance shall notify the support obligor in writing that his or her continued failure to pay the support arrears shall result in notification to the department of motor vehicles to suspend the support obligor's driving privileges unless the support obligor complies with the requirements . . . of this subdivision." On the date of the notice SCU claimed respondent owed arrears of $3,860.94 which was the greater than four months of child support or $2,889.60. A portion of the arrears owed was due to one unreimbursed medical amount of $1,926.76 charged to him on October 21, 2004, and the remaining amount was due to unpaid weekly child support that began to accrue when he lost his job on November 17, 2004.

Footnote 2: The challenge was filed pursuant to Social Services Law § 111-b (12) (d) (1): "A support obligor may challenge in writing the correctness of the determination of the support collection unit that the obligor's driving privileges should be suspended, and in support of the challenge may submit documentation demonstrating mistaken identity, error in calculation of arrears, financial exemption from license suspension . . . the absence of an underlying court order to support such determination, or other reason that the person is not subject to such determination."

Footnote 3: The objection was filed pursuant to Family Court Act § 454 (5) and Social Services Law § 111-b (12) (d) (2) which provides that "[a] support obligor may within thirty-five days of the date of notice denying his or her challenge by the support collection unit request that the family court review the support collection unit's determination . . . If the support obligor requests the family court to review the determination of the support collection unit, the support collection unit shall not notify the department of motor vehicles to suspend the support obligor's driving privileges until fifteen days after mailing a copy of the judgment by the family court to the support obligor denying the objections." In this case, the respondent's objection was timely served on the SCU as evidenced by the stamp on the front page indicating it was received by the SCU office within 35 days of the denial of his challenge.

Footnote 4: Attached to the rebuttal was an affidavit of mail service indicating that a copy of the rebuttal was sent to the respondent at his residence.

Footnote 5: In connection with the petitioner's prior upward modification, respondent's child support obligation was set at $168 weekly and was made payable through an income execution that was implemented by his employer, Epic Security Corp.

Footnote 6: At this point respondent owed one unreimbursed medical payment of $1,926.76 for the child's dental expenses.

Footnote 7: The respondent filed on November 18, 2004 and the matter was adjourned to January 20, 2005 for return of process. On that date respondent could not attend court due to a funeral and the matter was adjourned to May 17, 2005.

Footnote 8: Calculated at a rate of $168 a week, the child support arrears that accrued from November 24, 2004 to January 14, 2005 totaled approximately $1,934.18 which, when coupled with the $1,926.76 unreimbursed medical expense, brought the total child support due to $3,860.94. This was an amount "equivalent to or greater than the amount of support due pursuant to such order for a period of four months." (Social Services Law § 111-b [12] [b] [1].)

Footnote 9: Lengthy adjournments and a failure to expedite hearings on downward modification petitions appears to be a pattern with this support magistrate. The respondent's December 19, 2001 petition for a downward modification was adjourned to February 14, 2002 and then to April 11, 2002 and then to June 18, 2002. Six months passed before the support magistrate made a determination of that application. If not for the income deduction in effect at that time, the respondent could have fallen into arrears then as well.